D. DUDLEY ALLERTON, Respondent, *v.* THE NEW YORK, LACKAWANNA AND WESTERN RAILWAY COMPANY, Appellant.

Deed — construction of provision conveying all lands necessary for construction of a railroad with release from damages for changing bed of stream — when action for damages must be dismissed because based upon trespass and not upon negligence of defendant.

The defendant, for the purpose of securing such rights as were deemed necessary to enable it to construct its railroad, took a deed for a substantial consideration, which conveyed "all lands in said town taken

or in any manner used or affected by the construction and operation of the railway now being constructed by the party of the second part, the lines of which are shown on a map of the location of said railway now on file; * * * and for value received we hereby permit and consent to and allow said second party to construct their roadbed on the line as located in such manner as they deem proper, and change the bed of the Conhocton River as proposed by second party, * * * and first party hereby for value received release said company from all damages, claim or claims for damages resulting or which may result by reason of such construction, changing of stream or cutting off the branch or removing of dams." *Held,* that this language clearly indicates the purpose of the grantor to convey every right and interest in all his lands, wherever situate in the town, that might be actually taken for the roadbed or that might be affected by the use of the road as constructed, and this use includes such changes in the bed of the river as were contemplated by the plan set forth on the map referred to; that the deed to defendant is phrased in such comprehensive terms as to clearly convey notice of record to the plaintiff when he subsequently purchased the land described in the complaint.

This action is based wholly upon the theory that defendant's acts were inherently wrongful and unlawful and not upon any claim of negligence in the construction or maintenance of the works which defendant erected, hence the complaint must be dismissed since the defendant is not liable for a trespass purely consequential upon the doing of a legal and authorized act without allegations and proof of negligence such as to render the corporation responsible on that ground.

*Allerton* v. *N. Y., L. & W. Ry. Co.*, 132 App. Div. 943, reversed.

(Argued October 18, 1910; decided November 15, 1910.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered May 11, 1909, affirming a judgment in favor of plaintiff entered upon a verdict and an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Halsey Sayles* for appellant. The learned trial court erred in charging that the easement and release contained in the deed from Hewett did not bind plaintiff. (*Bushnell* v. *Proprietors*, 31 Conn. 150; *S. L. I. M. & S. R. Co.* v. *Walbrink*, 1 S. W. Rep. 545; Washburn on Easements, 52; *Van*

*Rensselaer* v. *A. & W. S. R. R. Co.*, 3 T. & C. 620 ; 62
N. Y. 68 ; 2 Washburn on Real Prop. 312, 315, 316 ; *Brewer*
v. *Marshall*, 18 N. J. Eq. 337 ; *Trustees* v. *Lynch*, 70 N. Y.
440 ; *Gould* v. *Partridge*, 52 App. Div. 40 ; *Campbell* v.
*McCoy*, 31 Penn. St. 263 ; *Wilmurt* v. *McGrane*, 16 App.
Div. 412 ; *Harsha* v. *Reid*, 45 N. Y. 415.)

*William H. Nichols* for respondent.    The learned trial
court did not err in charging that the easement and release
contained in the deed from Hewlett did not bind the plain-
tiff.    (*Stisser* v. *N. Y. C. & H. R. R. R. Co.*, 32 App. Div.
98 ; *Eichleay* v. *Wilson*, 42 Wkly. Notes [Pa.], 525 ; *G. &
C. R. R. Co.* v. *Nunnamaker*, 4 Rich. Law, 107 ; *Dexter* v.
*Beard*, 130 N. Y. 556 ; *Heath* v. *Hewitt*, 127 N. Y. 166 ;
*Maloney* v. *I. B. Co.*, 173 N. Y. 310 ; *Schoellkoff* v. *Coats-
worth*, 166 N. Y. 84 ; *Gillet* v. *Bank of America*, 160 N. Y.
549 ; Washburn on Real Prop. [6th ed.] § 1231 ; *Coleman*
v. *M. B. I. Co.*, 94 N. Y. 229 ; *Cole* v. *Hughes*, 54 N. Y.
449 ; *Clark* v. *Devoe*, 124 N. Y. 126 ; *Holt* v. *Flashman*,
75 App. Div. 599.)

WERNER, J.    The plaintiff is the owner of about forty
acres of land, bounded in part by the Conhocton river, in the
town of Bath, Steuben county.    He complains that the defend-
ant has wrongfully and unlawfully changed and diverted the
channel of that river from its former natural course, so as to
precipitate upon plaintiff's land large quantities of flood water,
debris and earth, which have torn up, washed out and flooded
his surface soil to his very substantial damage.    The defend-
ant has met this complaint (1) with a general denial, (2) with
the defense that the plaintiff's damage was occasioned by
extraordinary and unprecedented floods which occurred from
natural causes over which the defendant had no control, and
(3) with the allegation that the defendant acquired from the
plaintiff's predecessor in title a grant in the nature of a per-
petual easement, under which the defendant had the right to
so change and deflect the course of the river as to flood the

plaintiff's lands, if that should be the necessary result of a careful, skillful and proper construction of its railroad and the works incident thereto.    That is, in substance, the controversy as outlined in the pleadings and characterized by the evidence.

The trial court took the view that the deed under which the defendant seeks to justify its alleged trespass was not broad enough to convey any easement or interest in the forty acres described in the complaint, and charged the jury, as matter of law, " that any attempted release of damages, or any actual release of damages as stated in that deed, would not be a covenant running with this forty acres which would be effectual as against a subsequent purchaser."    Under this charge, to which an exception was duly taken, the case was submitted to the jury upon the issue whether the injury to the plaintiff's land had been occasioned by any act of the plaintiff, or whether it was due wholly to the so-called wrongful and unlawful acts of the defendant.    The jury gave a verdict for the plaintiff.    From the judgment entered upon that verdict an appeal was taken to the Appellate Division, where there was a unanimous affirmance.    As we have not been favored with an opinion setting forth the reasons for the affirmance, we must assume that the Appellate Division assented to the correctness of the trial court's construction of the deed referred to, and that view of the case presents the question which this court is asked to decide upon defendant's appeal.    It is essential to an understanding of this question that the salient parts of the deed and the circumstances surrounding its execution should be briefly stated.

In 1881 the defendant was preparing to build its railroad through the town of Bath over a route which embraced a portion of the lands owned by one Hewlett, consisting of a mill and water power on the southerly side of the Conhocton river.    At this point there was a sweeping curve in the natural channel of the stream which intersected the proposed line of the railroad in two different places, and would apparently have necessitated the building of two bridges unless the

stream should be deflected into a new channel confined wholly to the northerly side of the railroad. When the railroad was afterward built in 1882 the channel of the stream was in fact deflected so as to carry it along the northerly side of the railroad. In 1881 Hewlett was also the owner of forty acres of land on the opposite side of the river and about a quarter of a mile distant from the mill site above referred to. The defendant, for the purpose of securing such rights as were deemed necessary to enable it to construct its railroad according to the plan shown in the map filed, took a deed from Hewlett for a substantial consideration, which conveyed " All that certain piece or parcel of land situate in the Town of Bath, in the County of Steuben, and State of New York, bounded and described as follows, to wit: All lands in said town taken or in any manner used or affected by the construction and operation of the railway now being constructed by the party of the second part, the lines of which are shown on a map of the location of said railway now on file in Steuben County, N. Y., together with all my rights to enter on any such land for purpose of repairing or constructing any water rights, also all water rights and privileges owned, held or enjoyed by the party of the first part or either of them in or to the waters of the Conhocton River, and all rights in or to any dams therein, and rights to maintain, change or remove the same, and all rights to use, alter or deepen the channel; and for value received we hereby permit and consent to and allow said second party to construct their roadbed on the line as located in such manner as they deem proper, *and change the bed of the Conhocton River as proposed by second party,* and to wholly, if they see fit, cut off the branch running from White's Channel to my mill (party of the first part), and first party hereby for value received release said company from *all damages, claim or claims for damages resulting or which may result by reason of such construction, changing of stream or cutting off the branch or removing of dams.*"

This deed was executed and delivered in August, 1881. In

December of the same year Hewlett conveyed to one Bedell the forty acres of land situate on the northerly side of the Conhocton river, being the side opposite from that on which the defendant's railroad was constructed, and in 1888 Bedell conveyed the same land to the plaintiff. The grievance complained of by the latter is that the change made by the defendant in the channel of the stream has caused the current thereof to wash away the high bank on the southerly side of the stream opposite his land, causing ice jams in the river which have turned the waters upon his land, carrying with them large quantities of debris and foreign matter, all of which have resulted in cutting away his surface soil and otherwise injuring his lands.

The concrete question, presented by the pleadings and proofs, is whether the plaintiff is entitled to recover of the defendant the damages which he has suffered, and the determination of that question depends, as we have stated, upon the correctness of the construction, by the courts below, of the deed from Hewlett to the defendant. A careful study and analysis of the instrument has convinced us that there is no logical middle ground between the two extremes contended for by the respective parties. It is either a conveyance in fee of so much of Hewlett's land as was actually taken for and occupied by the defendant's railroad, with such easements in such remaining land as should be affected by the construction or operation of the railroad; or it is simply a conveyance of the land actually taken, accompanied by the mere personal covenant of the grantor in the form of a release by him of all further claims for damages. We think the latter view, adopted by the courts below, is untenable. Language could hardly be more broad or sweeping than that used by the grantor. He conveyed all his right, title and interest in " *all* lands  *  *  *  taken or in any manner used or affected by the construction and operation of the railway  *  *  *  the lines of which are shown on a map of the location." The map shows that it was a part of the plan to change the course of the river and the deed expressly gives the

grantee the right to "change the bed of the Conhoc-
ton River as proposed." This language clearly indi-
cates the purpose of the grantor to convey every right and
interest in all his lands that might be actually taken for the
roadbed or that might be affected by the use of the road as
constructed, and this use includes such changes in the bed of
the river as were contemplated by the plan set forth on the
map referred to. That is the plain import of the deed which,
under fixed and familiar rules, is to be construed most
strongly against the grantor. (Elphinstone on Interpretation
.of Deeds, rule 21, p. 94; Devlin on Deeds [2d ed.], sec. 848.)
The context of the deed is quite in harmony with the explicit
terms of the Railroad Law, under which railroad corporations
are expressly authorized to acquire easements in lands (Rail-
road Law, sec. 7, subd. 4), and brings the case at bar fairly
within the principle applied in *Van Rensselaer* v. *Albany &
W. S. R. R. Co.* (62 N. Y. 65), where it was held that an instru-
ment, containing covenants not unlike those in the deed from
Hewlett to the defendant, was a grant of the privilege to
maintain an embankment which occasioned landslides and
deposits of earth upon Van Rensselaer's land. In view of
the very comprehensive stipulations in the deed from Hewlett
to the defendant it is a circumstance of minor importance
that the parcel of forty acres now owned by the plaintiff
happens to be situate on the opposite side of the river at
some distance from the place where the defendant's railroad
actually runs over the other lands formerly owned by Hewlett.
Geographical location might be of controlling influence if the
deed did not by its very terms embrace all of the grantor's
land and provide for the very contingency which has resulted
in the condition from which the plaintiff's damage has arisen.
The right given to the defendant, to change the course of the
river in accordance with the plan indicated on the map filed,
was one which Hewlett was competent to convey. The
owner of land may impose upon it any burden, however
injurious or destructive, not inconsistent with his general
right of ownership, if such burden is not in violation of

public policy, and does not injuriously affect the property rights of others. It was one of the contemplated results of Hewlett's grant to the defendant that new and possibly burdensome conditions were to be created, even if the plan were most properly, carefully and skillfully executed. That was one of the things for which Hewlett was paid the substantial sum of four thousand dollars, as is shown by the clause in the deed releasing the defendant from "all damages, claim or claims for damages, resulting *or which may result*" to any of the grantor's land in the town of Bath, affected by the changing of the stream. That, we think, is the only reasonable and logical deduction to be drawn from Hewlett's deed to the defendant, which is phrased in such comprehensive terms as to clearly convey notice of record to the plaintiff when he subsequently purchased the forty acres of land described in the complaint.

This view of the case necessitates the reversal of the judgment; and the complaint must also be dismissed, for the plaintiff's action is based wholly upon the theory that the defendant's acts were inherently wrongful and unlawful, and not upon any claim of negligence in the construction or maintenance of the works which the defendant erected. In that regard the case at bar is like the case of *Gordon* v. *Ellenville & K. R. R. Co.* (195 N. Y. 137) where we held that a railroad corporation was not liable for a trespass, purely consequential upon the doing of a legal and authorized act, unless there were allegations and proof of such negligence in the doing of the act as to render the corporation responsible upon that ground.

The judgment should be reversed and the complaint dismissed, with costs to the defendant in all the courts.

CULLEN, Ch. J., GRAY, HAIGHT, VANN and CHASE, JJ., concur.

Judgment reversed, etc.