■ JUST-IRV SALES, INC., Formerly Known as TROY MATTRESS COMPANY, INC., Appellant, v AIR-TITE BUSINESS CENTER, LLC, Respondent. [655 NYS2d 131] —Carpinello, J. Appeal from an order of the Supreme Court (Hughes, J.), entered June 11, 1996 in Albany County, which, *inter alia,* granted defendant's cross motion for summary judgment dismissing the amended complaint.

Plaintiff, doing business under the name Troy Mattress Company, is a commercial tenant of premises located at 1529 Central Avenue in the Village of Colonie, Albany County. For over 20 years, this retail space has been rented by plaintiff and its predecessor-in-interest who sell mattresses and bedding-related products. A freestanding sign has stood on the property since 1975 with a panel advertising "Troy Mattress Co."

In May 1995, defendant purchased the subject premises and shortly thereafter announced its plan to replace the existing multipanel sign with a sign simply identifying the "site". At issue is a 1992 lease entered into between defendant's predecessor-in-interest, as landlord, and plaintiff's predecessor-in-interest, as tenant. An addendum to the lease provides the following with respect to the freestanding sign: "exterior sign: * * * [T]he signs on the sign frame have to be changed with sizes of signs in approximate proportion to sizes of Tenants' leased spaces in the building. Landlord shall consult sign professionals to redesign the sign for four tenants. A sign slot of the size of one-quarter to one-third *shall be offered to Tenant.* Tenant may decline the offer. If Tenant accepts the offer, Tenant shall order [its] own at [its] own expense. Tenant shall pay a monthly fee to Landlord for the maintenance and energy use" (emphasis supplied).

In September 1995, Troy Mattress commenced the instant action seeking a permanent injunction preventing defendant from removing, replacing or altering the multipanel freestanding sign. Although Supreme Court granted Troy Mattress a

temporary restraining order, the court denied its request for a preliminary injunction. Before Troy Mattress had an opportunity to perfect an appeal to this Court, defendant removed the old sign and erected a new freestanding sign bearing the legend "AIR-TITE BUSINESS CENTER".

Plaintiff, who purchased the assets of Troy Mattress and assumed the lease on October 20, 1995, filed an amended complaint seeking, *inter alia*, a determination of the rights and liabilities of the parties under the lease and damages for defendant's breach of the lease. Thereafter, plaintiff moved for partial summary judgment on the issue of liability only, and defendant cross-moved for summary judgment dismissing the complaint. Supreme Court denied plaintiff's motion and granted defendant's cross motion, prompting this appeal.

We are of the opinion that Supreme Court erred in granting defendant's cross motion for summary judgment. "[W]hen parties set down their agreement in a clear, complete document, their writing should as a rule be enforced according to its terms" (*W. W. W. Assocs. v Giancontieri*, 77 NY2d 157, 162). Here, under the "clear and unambiguous terms in a lease" (*New York Overnight Partners v Gordon*, 217 AD2d 20, 27, *affd* 88 NY2d 716), plaintiff was entitled to advertising space on a freestanding sign.

With respect to the claim that defendant breached the lease, we note that "[i]mplicit in all contracts is a covenant of good faith and fair dealing in the course of contract performance" (*Dalton v Educational Testing Serv.*, 87 NY2d 384, 389). This implied obligation encompasses any promise which a reasonable person in the position of the promisee would be justified in understanding was included (*see, Rowe v Great Atl. & Pac. Tea Co.*, 46 NY2d 62, 69). Moreover, the covenant of good faith and fair dealing "is breached when a party to a contract acts in a manner that, although not expressly forbidden by any contractual provision, would deprive the other party of the right to receive the benefits under their agreement" (*Jaffe v Paramount Communications*, 222 AD2d 17, 22-23).

Here, especially in light of the unambiguous provisions of the lease, defendant owed an obligation to deal with plaintiff in good faith and to attempt to obtain a variance for a new multipanel sign before removing the old freestanding sign.[1] Defendant's conduct in removing the freestanding sign without first applying for a variance at the very least creates a ques-

---

1. There is evidence that defendant offered plaintiff a slot on a new freestanding sign, but conditioned this offer on plaintiff's payment of $5,000— an obligation nowhere contained in the lease.

tion of fact as to whether it breached the lease and its concomitant implied covenant of good faith and fair dealing (*see, e.g., Tepedino v City of Long Beach*, 226 AD2d 446).

In order to justify its removal of the sign, defendant argues that it was *compelled* to take it down because of the 1975 amendments to the Village's sign regulations.[2] In our view, there is ample evidence in the record that defendant's reliance upon the sign regulations is nothing more than a pretextual justification for its own intentional breach of the lease. Despite the sign's admitted nonconforming status, the record is totally devoid of any evidence that any Village official ever cited defendant or its predecessor for violating the Village sign regulations or required them to remove the sign during the entire 20-year period that it remained in front of the premises. Indeed, insofar as the Village is concerned, it appears that the old sign could have remained indefinitely. Further, it does not escape this Court's attention that the new sign reads "AIR-TITE BUSINESS CENTER" (emphasis supplied) and that the only remaining tenants at 1529 Central Avenue are plaintiff and Air-Tite Windows and Siding. Defendant's argument that this new sign reflects that more than one business occupies the "site" can charitably be characterized as disingenuous.

Based on this evidence and the fact that a party's good faith, or lack thereof, is not an issue which can readily be determined on a motion for summary judgment (*see, Coan v Estate of Chapin*, 156 AD2d 318, 319), summary judgment is inappropriate for either party.

Mikoll, J. P., Casey, Peters and Spain, JJ., concur. Ordered that the order is modified, on the law, with costs to plaintiff, by reversing so much thereof as granted defendant's cross motion; cross motion denied; and, as so modified, affirmed.

---

2. The 1975 Village of Colonie Code provided that no sign could be larger than 100 square feet and that the face of a sign could not exceed 50 square feet absent a special application or variance. It further provided that only one advertiser's message could appear on the face of any given sign. Nonconforming signs were supposed to have been phased out over a five-year period depending on the sign's value.